```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF VIRGINIA
 2                 Charlottesville Division

 3

 4   UNITED STATES OF AMERICA,       Criminal No. 3:7cr00019

 5

 6           Vs.                     Charlottesville, Virginia

 7   KELVIN SMITH and
     HAMPTON SMITH,
 8
                    Defendants.   October 15, 2007
 9

10
           TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
11       BEFORE THE HONORABLE NORMAN K. MOON,
              UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14
     For the United States:   U.S. Attorney's Office
15                            NANCY S. HEALEY, ESQ.
                              255 W. Main St. Room 104
16                            Charlottesville, VA 22902

17   For Deft. Kelvin Smith:  Tucker Griffin Barnes
                              DANA SLATER, ESQ.
18                            307 W. Rio Rd.
                              Charlottesville, VA 22901
19
     For Deft. Hampton Smith: LINDSAY G. DORRIER, JR., ESQ.
20                            P.O. Box 818
                              Scottsville, VA 24590
21
     Court Reporter:          Sonia Ferris, RPR
22                            U.S. Court Reporter
                              255 W. Main St.  Room 304
23                            Charlottesville, VA 22902
                              434-296-9284
24

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

```
 1                   THE COURT:  Call the case.

 2                   THE CLERK:  Yes, Your Honor.

 3                   This is Criminal Action No. 3:07cr19, United

 4    States of America vs. Kelvin Smith and Hampton Smith.

 5                   THE COURT:  Are both defendants ready? Are

 6    you ready?

 7                   MS. SLATER:  Thank you, Judge; yes.

 8                   THE COURT:  Are you ready?

 9                   MR. DORRIER: Yes, Your Honor.

10                   THE COURT:  Government ready?

11                   MS. HEALEY:  Yes, Your Honor.

12                   THE COURT:  Would Mr. Hampton Smith stand

13    first, please?

14                   State your full name, please, sir.

15                   THE DEFENDANT:  Hampton Lamar Smith.

16                   THE COURT:  And the date of your birth?

17                   THE DEFENDANT: 6/7/84.

18                   THE COURT:  How far did you go in school?

19                   THE DEFENDANT:  Eleventh grade.

20                   THE COURT:  Are you able to read and

21    understand English?

22                   THE DEFENDANT:  Yes, sir.

23                   THE COURT:  Are you currently or have you

24    recently been under the care of a physician or

25    psychiatrist?
```

```
1              THE DEFENDANT:  No, sir.

2              THE COURT:  Have you been hospitalized or

3    treated for narcotic addiction?

4              THE DEFENDANT:  No, sir.

5              THE COURT:  Are you presently under the

6    influence of any drug or medication or alcoholic

7    beverage of any kind?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  How do you feel physically

10   today?

11             THE DEFENDANT:  Healthy.

12             THE COURT:  Have you received a copy of the

13   indictment?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Have you had ample time to

16   consult with your attorney?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Do you want the indictment read

19   or will you waive it's reading?

20             THE DEFENDANT:  Waive it.

21             THE COURT:  How do you plead to the charge?

22             THE DEFENDANT:  Guilty.

23             THE COURT:  You may a seat and I'll ask Mr.

24   Kelvin Smith to stand.

25             Mr. Smith, would you state your full name,
```

1    please?

2              THE DEFENDANT:  Kelvin Jerome Smith.

3              THE COURT: And the date of your birth?

4              THE DEFENDANT: 12/10/84.

5              THE COURT:  How far did you go in school?

6              THE DEFENDANT:  To the tenth.

7              THE COURT:  Are you able to read and

8    understand English?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Are you currently or have you

11   recently been under the care of a physician or a

12   psychiatrist?

13             THE DEFENDANT: No, Your Honor.

14             THE COURT:  Have you been hospitalized or

15   treated for narcotic addiction?

16             THE DEFENDANT:  No.

17             THE COURT:  Are you presently under the

18   influence of any drug or medication or alcoholic

19   beverage of any kind?

20             THE DEFENDANT:  No.

21             THE COURT:  How do you feel today,

22   physically?

23             THE DEFENDANT:  Feel all right.

24             THE COURT:  Have you received a copy of the

25   indictment?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Have you had ample time to

3    consult with your attorney?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you want the indictment read

6    or will you waive it's reading?

7          THE DEFENDANT:  I'll waive it.

8          THE COURT:  How do you plead to the charge?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  I'll ask both defendants now to

11    stand.

12          I'm going to ask you questions now and I

13    need both of you to answer questions loud enough for me

14    and the Court Reporter to hear your answer.  Don't nod

15    answers, so that we can hear.

16          First, I find that each defendant is

17    competent to plead.  Before accepting your guilty plea,

18    there are a number of questions which I will ask you to

19    assure that your plea is valid.  If you do not

20    understand any of the questions or if at any time you

21    wish to consult with your attorney, please say so

22    because it is essential that you understand each

23    question before you answer.

24          First, do you understand you are now under

25    oath and if you answer any of my questions falsely, your

1  answers may later be used against you in another

2  prosecution for perjury or making a false statement?

3          DEFENDANT HAMPTON SMITH: Yes, sir.

4          DEFENDANT KELVIN SMITH:  Yes, sir.

5          THE COURT:  Are you fully satisfied with the

6  counsel, representation and advice given you in this

7  case by your attorney?

8          DEFENDANT HAMPTON SMITH: Yes, sir.

9          DEFENDANT KELVIN SMITH:  Yes, sir.

10          THE COURT:  Do you understand that under the

11  Constitution and laws of the United States, you are

12  entitled to a trial by a jury on the charges contained

13  in the indictment?

14          DEFENDANT HAMPTON SMITH: Yes, sir.

15          DEFENDANT KELVIN SMITH:  Yes, sir.

16          THE COURT:  Do you understand at that trial,

17  you would be presumed to be innocent and the government

18  would be required to prove you guilty by competent

19  evidence and beyond a reasonable doubt before you could

20  be found guilty and you would not have to prove you were

21  innocent?

22          DEFENDANT HAMPTON SMITH: Yes, sir.

23          DEFENDANT KELVIN SMITH:  Yes, sir.

24          THE COURT:  Do you understand that in the

25  course of the trial, the witnesses for the government

1  would have to come to court and testify in your presence

2  and your counsel could cross-examine the witnesses for

3  the government, object to evidence offered by the

4  government and offer evidence on your behalf?

5          DEFENDANT HAMPTON SMITH: Yes, sir.

6          DEFENDANT KELVIN SMITH:  Yes, sir.

7          THE COURT:  Do you understand also at trial,

8  you would have the right to testify if you chose to do

9  so, but you would also have the right not to testify and

10  no inference or suggestion of guilt could be drawn from

11  the fact you did not testify?

12          DEFENDANT HAMPTON SMITH: Yes, sir.

13          DEFENDANT KELVIN SMITH:  Yes, sir.

14          THE COURT:  If you plead guilty and I accept

15  your plea, do you understand you will waive your right

16  to a trial and the other rights I've just discussed and

17  there will be no trial? I will enter a judgment of

18  guilty and sentence you on the basis of your guilty plea

19  after considering a pre-sentence report.

20          DEFENDANT HAMPTON SMITH: Yes, sir.

21          DEFENDANT KELVIN SMITH:  Yes, sir.

22          THE COURT:  If you plead guilty, do you

23  understand you will waive -- strike that.

24          Do you still want to plead guilty?

25          DEFENDANT HAMPTON SMITH: Yes.

1          DEFENDANT KELVIN SMITH:  Yes.

2          THE COURT:  Each of you have received a copy

3    of the indictment.  Have you discussed with your

4    attorney the charges in the indictment to which you

5    intend to plead guilty?

6          DEFENDANT HAMPTON SMITH: Yes, sir.

7          DEFENDANT KELVIN SMITH:  Yes, sir.

8          THE COURT:  Do you understand each charge?

9          DEFENDANT HAMPTON SMITH: Yes, sir.

10          DEFENDANT KELVIN SMITH:  Yes, sir.

11          THE COURT:  Ms. Healey, would you summarize

12    the elements the government is required to prove and

13    also state the punishment provided by law in each count?

14          MS. HEALEY:  Yes, Your Honor.

15          Mr. Hampton Smith is only pleading guilty to

16    Count Four, one of the distribution counts, but I'll

17    just go in order of the way they appear in the

18    indictment.

19          Count One charges conspiracy.

20          I'm reading the counts Mr. Kelvin Smith will

21    be pleading guilty to.

22          Count One charges a conspiracy.  That

23    requires as follows:  First, that we show there's an

24    agreement between two or more people to violate federal

25    drug laws, here to distribute and possess with intent to

1   distribute quantities of cocaine base, cocaine powder

2   and marijuana. Secondly, the defendant knowingly joined

3   this agreement or conspiracy.  Thirdly, that in this

4   particular conspiracy, that the conspiracy involved at

5   least five grams or -- five grams or more of cocaine

6   base; and finally, that the conspiracy occurred, at

7   least in part, in the Western District of Virginia.

8           The next count, Count Two, charges Mr.

9   Kelvin Smith with making a false statement required by

10  law to be kept in the records of a federal firearms

11  licensee.  That requires as follows:  First, that the

12  defendant knowingly made a false statement or

13  representation; secondly, that the false statement or

14  representation was with respect to information that was

15  required by Chapter 44 of Title 18 United States Code to

16  be kept in the records of a federally licensed firearms

17  dealer; and thirdly, that this occurred, at least in

18  part, in the Western District of Virginia.

19          Count Five charges Kelvin Smith with being a

20  drug user in possession of a firearm.  We'd have to

21  show, first, that the defendant knowingly possessed a

22  firearm; secondly, that at the time, the defendant was

23  an unlawful user of a controlled substance; third, that

24  the gun at some point travelled interstate, such as

25  being manufactured outside the Commonwealth of Virginia;

1  and finally, that this occurred, at least in part, in

2  the Western District of Virginia.

3            Counts Four and Six charge Kelvin Smith.

4  Count Four also charges Hampton Smith and that's the

5  charge to which he's pleading guilty.  Kelvin, I

6  believe, is pleading to Count Six, but they're the same

7  thing, distribution of cocaine.

8            We'd have to show, first, that the defendant

9  knowingly distributed cocaine; and secondly, that this

10  occurred, at least in part, in the Western District of

11  Virginia.

12            Count Seven, to which Kelvin Smith is

13  pleading to, essentially a lesser included -- I'm not

14  sure if it's technically a lesser included -- it charges

15  Kelvin Smith with using or carrying a firearm during and

16  in relation to a drug trafficking crime or possessing

17  such firearm in furtherance of such drug trafficking

18  crime.

19            In terms of the lesser included, he's

20  charged in Count Seven with both brandishing and

21  discharging a firearm during that incident.  He's

22  pleading to the discharging during that particular

23  incident.  Because of that, he faces a mandatory minimum

24  of seven years consecutive to any other sentence that he

25  serves and looking at up to life imprisonment without

1    the possibility of parole on that particular charge; and

2    a $250,000 fine.

3              The elements for that in this case, that

4    one, the defendant knowingly used or carried a firearm

5    during and in relation to a drug trafficking crime or

6    knowingly possessed a firearm in furtherance of a drug

7    trafficking crime; secondly, the defendant in this case

8    brandished the firearm during the incident; and finally,

9    this occurred, at least in part, in the Western District

10   of Virginia.

11             THE COURT:  Do each of you understand then

12   what the government would have to prove beyond a

13   reasonable doubt before you could be found guilty?

14             DEFENDANT HAMPTON SMITH: Yes.

15             DEFENDANT KELVIN SMITH:  Yes.

16             THE COURT:  Do each of you understand the

17   range of punishment provided by law in each case?

18             DEFENDANT HAMPTON SMITH: Yes, sir.

19             DEFENDANT KELVIN SMITH:  Yes, sir.

20             THE COURT:  You understand that the offenses

21   to which you're pleading guilty are felony offenses and

22   that if your plea is accepted, you will be adjudged

23   guilty of such offenses and such adjudication may

24   deprive you of valuable civil rights, such as the right

25   to vote, the right to hold public office, the right to

1    serve on a jury and the right to possess any kind of

2    firearm?

3            DEFENDANT HAMPTON SMITH: Yes, sir.

4            DEFENDANT KELVIN SMITH:  Yes, sir.

5            THE COURT:  Do you understand that

6    generally, a sentence of probation will not be

7    available -- any of these cases where someone might get

8    probation? If it's under 20 years -- there's no

9    mandatory minimums anyway.

10           MS. HEALEY:  With respect to Hampton Smith,

11   he's just pleading to a single count of simple

12   possession.  I guess it's theoretically possible.

13           THE COURT:  Understand, generally, you don't

14   get straight probation in these cases.  Do you

15   understand?

16           DEFENDANT HAMPTON SMITH: Yes, sir.

17           DEFENDANT KELVIN SMITH:  Yes, sir.

18           THE COURT:  Do you understand that the Court

19   can impose a special assessment of $100 for each felony

20   count?

21           DEFENDANT HAMPTON SMITH: Yes, sir.

22           DEFENDANT KELVIN SMITH:  Yes, sir.

23           THE COURT:  Have you and your attorney

24   talked about how the Sentencing Commission advisory

25   guidelines might apply to your case?

```
1                    DEFENDANT HAMPTON SMITH: Yes, sir.

2                    DEFENDANT KELVIN SMITH:  Yes, sir.

3                    THE COURT:  Do you understand the Court will

4    not be able to determine the sentence for your case

5    until after a pre-sentence report has been completed and

6    you and the government have had an opportunity to

7    challenge the facts reported by the probation officer?

8                    DEFENDANT HAMPTON SMITH: Yes, sir.

9                    DEFENDANT KELVIN SMITH:  Yes, sir.

10                   THE COURT:  Do you also understand that

11   after it's been determined what advisory guideline

12   applies to a case, the judge has the authority to impose

13   a sentence that is more severe or less severe than that

14   called for by the guidelines?

15                   DEFENDANT HAMPTON SMITH: Yes, sir.

16                   DEFENDANT KELVIN SMITH:  Yes, sir.

17                   THE COURT:  Do you understand that under

18   some circumstances, you or the government may have the

19   right to appeal any sentence that I impose?

20                   DEFENDANT HAMPTON SMITH: Yes, sir.

21                   DEFENDANT KELVIN SMITH:  Yes, sir.

22                   THE COURT:  Do you understand that parole

23   has been abolished and if you're sentenced to prison,

24   you will not be released on parole?

25                   DEFENDANT HAMPTON SMITH: Yes, sir.
```

```
1              DEFENDANT KELVIN SMITH:  Yes, sir.
2              THE COURT:  Do you understand that if the
3     sentence is more severe than you expect, you will still
4     be bound by your plea and will have no right to withdraw
5     it?
6              DEFENDANT HAMPTON SMITH: Yes, sir.
7              DEFENDANT KELVIN SMITH:  Yes, sir.
8              THE COURT:  Mr. Dorrier, will you just
9     summarize the essential elements of your client's plea
10    agreement?
11             MR. DORRIER:  Your Honor, the plea agreement
12    states basically that Hampton Smith takes
13    responsibilities for his actions, that is, admits that
14    he, on the date in question, that he distributed
15    cocaine; that he was relative with his co-defendant,
16    Ricus Smith and Kelvin Smith; that he admits that he did
17    the act; and he's basically pleading guilty because he,
18    in fact, is guilty; that he seeks -- I don't know
19    whether you want me to get into substantial assistance,
20    Your Honor.  I don't know whether it's proper.
21             THE COURT:  I understand that's in there.
22    Really, what I just want publically to add are those
23    things sort of detrimental to him, be sure he's not
24    expecting something that's not in there or that he's in
25    some way going to be --
```

```
 1              MR. DORRIER: He's been in jail since July.

 2              THE DEFENDANT:  May.

 3              MR. DORRIER: Excuse me, May.

 4              He basically states what's in the plea

 5    agreement. We've gone over it page by page, paragraph by

 6    paragraph.  We've read every word of it. He's initialed

 7    every page.  I feel he knows what it contains and what

 8    the terms are.  He's pleading guilty to one felony, one

 9    charge and --

10              THE COURT:  Does he waive his right to

11    appeal guideline issues?

12              MR. DORRIER: Guidelines would apply, Your

13    Honor.

14              We saw there was a range of sentence from 12

15    to 18 months.

16              THE COURT:  But he's waiving any right to

17    appeal those issues.

18              MR. DORRIER: That's correct, Your Honor.

19    He's waiving any rights to appeal.

20              THE COURT:  He's waiving the right to

21    collaterally attack.

22              MR. DORRIER: Yes, Your Honor.

23              His record is, he's had one prior offense,

24    pleaded guilty in state court to possession of a gun.

25              THE DEFENDANT:  Misdemeanor.
```

1          MR. DORRIER: Misdemeanor, concealment.

2  That's his only record.

3          THE COURT:  Ms. Healey, anything you would

4  add?

5          MS. HEALEY:  Mr. Dorrier is correct.  It's

6  fairly simple.  He's pleading to one count.  We'll

7  dismiss the other counts at the appropriate time.  We

8  agree to recommend that he be held responsible for less

9  than 25 grams of cocaine.  He gets credit for acceptance

10 of responsibility if he accepts responsibility.  There's

11 the standard provision about proffer evidence.  He is

12 waiving his right to appeal a sentence and to

13 collaterally attack the judgment.  He's also waiving the

14 statute of limitations if for some reason the plea

15 agreement was put aside and there's a provision for

16 substantial assistance which has been referenced.

17          I did want to state, too, all the charges I

18 indicated before, they all carry terms of supervised

19 release as well, which I should have mentioned.

20          That's essentially the provisions, Your

21 Honor.

22          THE COURT:  Hampton Smith, you heard your

23 attorney and Ms. Healey speak of the plea agreement. Did

24 they say anything about it that's different from the way

25 you understood it to be?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Did you read and understand it

3    before you signed it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Did anyone make any other

6    promise or assurance to you of any kind in an effort to

7    induce you to enter a plea of guilty in the case?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Anyone try to force you to plead

10   guilty?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  And you understand you're

13   specifically giving up -- you're voluntarily giving up

14   your right to appeal the sentence in the case and you're

15   voluntarily giving up your right to file a writ of

16   habeas corpus and actions like that, after verdict?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  You may have a seat now.

19         I'll ask Mr. Kelvin Smith to stand.

20         Ms. Slater, would you summarize his

21   agreement?

22         MS. SLATER: Yes, Judge, I shall.

23         Mr. Kelvin Smith, in accordance with the

24   plea agreement, is pleading guilty to Count One, Two,

25   Five, Six and Seven.  In exchange, any other counts that

1    are applied to him will be -- will not be prosecuted.

2    Count Seven was originally charged as a

3    924(c)(1)(A)(iii), but the government has amended that

4    to 924(c)(1)(A)(ii), which carries a minimum mandatory

5    of seven years.

6            Mr. Smith is aware, by pleading, all of his

7    rights to trial and witnesses are not open to him; that

8    the guidelines apply.

9            In paragraph four, it states that he is

10   agreeing that a base offense level of 32 in the

11   guidelines does apply, though it's a matter to be

12   determined by the Court and he may disregard the

13   stipulation and fix the drug weight at a higher or lower

14   amount.  But the role in his offense is left up to the

15   pre-sentence report whether there's aggravating or

16   mitigating.  He understands that as far as Counts -- for

17   his role in the offense.

18           The guidelines, the government will be

19   asking the Court to go to the mid range of the

20   guidelines.  He understands that.

21           He understands that if there are any issues

22   with representation that he's to notify the Court prior

23   to sentencing and that otherwise, he waives his right to

24   challenge that and outside the bounds of some sort of

25   unconstitutional recommendation from the judge for

1    sentencing, he also waives his attack on the sentencing.

2         As far as the denial of federal benefits,

3    that has been explained.

4         The waiver of statute of limitations, if it

5    comes up, that's been explained.

6         Anything dealing with any sort of, if there

7    is any sort of substantial assistance, has been

8    explained to him and the remedies for the breach of the

9    plea, what the government can do, has been explained to

10   him in that the government can withdraw out of the plea

11   and all that's pretty much standard, starting at square

12   one.

13        Everything else is fairly -- those are the

14   highlights, Judge.

15        THE COURT:  Anything you would add, Ms.

16   Healey?

17        MS. HEALEY:  I will add that he also waived

18   his right to collaterally attack the judgment.  I know

19   there was a statement about him waiving his right to

20   appeal the sentence and guidelines stuff, but it's also

21   in the collateral attack.

22        The plea agreement also makes clear if he

23   accepts responsibility, he's looking at a two-point

24   decrease. I have not put in the language of the three

25   points, given the other benefits we have put in that are

1    beneficial to the defendant in this case.

2              (Counsel conferred).

3              Role in the offense, Your Honor, he does

4    agree his base offense should be increased by two

5    levels, based on his role in the offense.  I knew there

6    was something in there.

7              Those are the relevant provisions, Your

8    Honor.

9              THE COURT:  Ms. Slater, do you agree with

10   her remarks?

11             MS. SLATER: May I just have a moment?

12             (Counsel conferred).

13             Yes, Judge.

14             THE COURT:  Mr. Smith, you've heard your

15   attorney and Ms. Healey speak of your plea agreement.

16   Did they say anything about it different from the way

17   you understood it to be?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Did you read and understand it

20   before you signed it?

21             THE DEFENDANT:  Yes, I did.

22             THE COURT:  Do you realize you're

23   voluntarily giving up your right to appeal the sentence

24   in the case and to collaterally attack the judgment in

25   the case?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you understand -- first of

3    all, did anyone make any other promise or assurance to

4    you of any kind in an effort to induce you to plead

5    guilty?

6           THE DEFENDANT:  No.

7           THE COURT:  You understand you're giving up

8    your right -- excuse me.  There's something else.

9           Has anyone attempted in any way to force you

10   to plead guilty?

11          THE DEFENDANT:  No.

12          THE COURT:  You may a seat and I'll ask Ms.

13   Healey to either summarize her evidence or call a

14   witness.

15          MS. HEALEY:  Yes, Your Honor.

16          This particular case, investigators learned

17   that these two defendants, along with Kelvin Smith's

18   brother, Ricus, were involved in dealing various drugs

19   in the Keswick area, as well as other areas of Albemarle

20   County or Charlottesville area.  Although the witnesses

21   indicate that Kelvin dealt on sort of a larger scale,

22   had a larger role, they learned also that Ricus and

23   Hampton Smith also dealt as well.

24          The time period stated in the indictment is

25   that it is -- the conspiracy spanned back as early as

1  2005 and continued at least until December, 2006.  But

2  witnesses have indicated that some of the defendants or

3  the defendants were using drugs well before then and

4  that drugs were sold by one or more of them well before

5  2005.

6           Witnesses have stated that cocaine powder,

7  marijuana and crack cocaine or cocaine base were all

8  sold.

9           Historical testimony would show that Kelvin

10  Smith would be responsible for greater then five grams

11  of crack and also substantial amounts of cocaine base

12  powder.

13           These defendants were also known, according

14  to various witnesses, to carry guns.  Witnesses stated

15  in particular, Kelvin Smith frequently carried a

16  firearm.

17           On May 4, 2006, which is one of the counts,

18  Kelvin Smith went to purchase a Keltech 9mm Luger Model

19  P-11 pistol, serial number, A6D36, at a federally

20  licensed firearms dealer, known as High Tech Outdoors

21  and Archery, located in the Pantops shopping mall, in

22  Albemarle County.  On the form that he was required to

23  complete for that firearms transaction, he falsely

24  stated that he was not an unlawful user of a controlled

25  substance. He knows that all the defendants in this case

1    were essentially using powder cocaine and marijuana.

2            On August -- in August, 2006, there were two

3    controlled buys made by an informant, in Albemarle

4    County.  The August 9, 2006, transaction in the

5    indictment involved both Kelvin Smith and Hampton Smith.

6    This is the count that Hampton Smith, of course, is

7    pleading guilty to.  The deal was set up between Kelvin

8    Smith and the informant, but Hampton Smith did the

9    actual hand-to-hand exchange.  He actually got in the

10   car with the informant and did the hand-to-hand change.

11           On August 11, 2006, this was the deal that

12   involved only Kelvin Smith.  During the second deal,

13   Kelvin Smith showed up in a silver Kia rental car.  What

14   investigators learned was that a girlfriend of Kelvin

15   Smith's had rented this particular vehicle.  When the

16   vehicle was returned to Enterprise rental car in

17   Albemarle County a few days later, the Keltech 9mm

18   pistol he had purchased back in May of 2006 was

19   recovered from within that vehicle.

20           The rental office -- interestingly, the

21   rental office for the Enterprise rental car was actually

22   next to the firearms shop where he bought the firearm a

23   few months earlier than that.

24           On November 24, 2006, Ricus and Kelvin Smith

25   shot another man during essentially a drug deal gone

1    bad.  Although witnesses have described this event

2    somewhat differently, most of them indicate the incident

3    occurred this way.  That night, the victim was riding

4    with a couple other people in the car. He was not the

5    driver.  There was a woman driving the car. They were

6    looking to buy some cocaine powder.  They stopped near

7    one home in Keswick.  Ricus Smith eventually got into

8    the car.  The woman who was driving drove the car over

9    to Ricus and Kelvin's mother's house on Black Cat Road,

10   in Keswick. The victim provided money to Ricus Smith and

11   most of the witnesses have said that Kelvin was going to

12   make the sale.  There's some question whether Ricus was

13   going to make the sale.

14           The victim at some point thought he was

15   getting ripped off, in part because Kelvin Smith was

16   apparently taking too long and also because he believed

17   he was getting shorted in the transaction. He thought it

18   was too small an amount of drugs. The victim, who was

19   unarmed, got into an altercation or argument with Ricus

20   and Kelvin, which became physical at some point.  Kelvin

21   Smith was the first to take out a gun.  Kelvin Smith and

22   the victim at some point struggled over the gun and at

23   some point, a round was discharged from Kelvin Smith's

24   gun, which is believed to be a 9mm pistol.

25           The clip from Kelvin's gun was apparently

1    ejected during this particular transaction. Ricus Smith

2    thereafter takes out his gun and fires two shots into

3    the victim.  He ends up in the hospital, but does

4    survive.  Kelvin Smith calls a friend who picks up

5    Kelvin and Ricus and takes them away from the area.

6    They end up going to Ricus's girlfriend's home and

7    change shirts and wash hands.  There were officers doing

8    surveillance and an officer hiding, I don't know if it

9    was in the bushes, but hiding somewhere, observes people

10   searching the lawn outside where the shooting had

11   occurred.  At some point, someone is seen picking up an

12   item from the lawn area and the people appear to this

13   officer to be rejoicing.

14            One of the people who was out there is seen

15   going inside the house.  It may be the mother of Kelvin

16   and Ricus Smith. The police try to call the house, but

17   get the answering machine, even though they know this

18   person has gone into the house. Thereafter, the woman

19   exits the house and says, "they just called, you can

20   leave now."  Shortly thereafter, the police make a car

21   stop from a car that leaves that home and they recover a

22   clip from underneath the passenger seat of the car that

23   is stopped.

24            There's also an incident, besides other

25   historical information, on December 13, 2006.  There was

1  a car stop involving Kelvin Smith, Hampton Smith and two

2  other individuals who are not in this indictment.

3              From that car or from people involved, there

4  were cocaine powder, scales and guns that were recovered

5  during that particular incident.

6              That's a summary of the evidence.

7              Thank you, Your Honor.

8              THE COURT:  Thank you.

9              Do the defendants wish to present any

10 evidence?

11             MS. SLATER: No, Judge.

12             THE COURT:  If not, I'll ask the defendants

13 to stand, please.

14             How do you plead to the charges; guilty or

15 not guilty?

16             DEFENDANT HAMPTON SMITH: Guilty.

17             DEFENDANT KELVIN SMITH:  Guilty, Your Honor.

18             THE COURT:  It is the finding of the Court

19 in United States versus Hampton Smith and United States

20 versus Kelvin Smith that the defendant is fully

21 competent and capable of entering an informed plea; that

22 each plea of guilty is a knowing and voluntary plea

23 supported by an independent basis in fact containing

24 each of the essential elements of the offense.

25             Each plea is therefore accepted and each is

1   now adjudged guilty of that offense.

2           I will order a pre-sentence report.  It is

3   in your best interests to cooperate with the probation

4   officer in furnishing information in that report because

5   the report will be important in my decision as to what

6   your sentence will be.

7           Your attorney may be present during any

8   interview if you so desire. You and your counsel have a

9   right and will have an opportunity to review the

10  pre-sentence report before the sentencing hearing. You

11  will also have an opportunity to comment on the report

12  at the time of the hearing.

13          You and your counsel will have an

14  opportunity to speak on your behalf at the hearing.

15          I'll ask Mr. Hampton Smith, would you step

16  over to the lectern for the guilty plea form?

17          (The clerk conferred with the Court).

18          Would both defendants raise your right hand

19  and be sworn?

20          (Both defendants sworn).

21          THE COURT:  You both understand she's saying

22  what you've already said today, you swear is the truth;

23  right?

24          DEFENDANT HAMPTON SMITH: Yes.

25          DEFENDANT KELVIN SMITH:  Yes.

```
 1                    (Guilty plea forms read and executed for

 2       Hampton Smith).

 3                    THE CLERK:  The guilty plea forms have been

 4       executed, Your Honor.

 5                    THE COURT:  Do you have a plea agreement

 6       that hasn't been handed up?

 7                    (Said plea agreement handed to the clerk).

 8                    Do you have a date for sentencing?

 9                    (The clerk conferred with the Court).

10                    THE CLERK:  I have December 28th available.

11                    MS. HEALEY:  Right now, that's available for

12       me.  Sometimes we go away.

13                    THE COURT:  We don't have to set it that

14       day.  Why don't we leave it and if you decide to go

15       away, we'll move it.

16                    MR. DORRIER: December 28th is fine with us,

17       Your Honor.

18                    THE COURT:  Is that all right with you?

19                    MS. SLATER: That's fine.  Mr. Smith is

20       anxious to leave his current facility, if there's a date

21       sooner.

22                    THE COURT:  That's about the minimum.  If

23       you have a problem, we'll work it out.

24                    MS. SLATER: I didn't hear the time though,

25       sir.
```

```
 1              THE CLERK:  We could do 10:00.

 2              MS. SLATER: Fine.

 3              THE COURT:  Is there anything else?

 4              MR. DORRIER: Your Honor, I just have one

 5   thing I want to do on behalf of my client.  My client,

 6   as stated, this was his first offense and he turned

 7   himself in voluntarily. His fiancee is in the courtroom.

 8   I would move -- he didn't make bond, but I would move he

 9   be released on his own recognizance prior to sentencing.

10   He's got a job.  He can work down at McDonald's.  He

11   would not be in contact with any of his co-defendants.

12              I'm making that motion on his behalf.

13              MS. HEALEY:  Judge, I think the statute

14   requires he stay in at this point.

15              I will say though, his PSR may be easier to

16   do than anybody else's.  He's not looking at that much

17   time under the terms of the plea agreement.  If the PSR

18   gets done, I don't know if there's any way to bring him

19   in earlier.  We have to oppose bond because the statute

20   requires upon conviction, he go in.

21              THE COURT:  The law requires he be taken

22   into custody or be in custody.  There's really nothing

23   that can be done.

24              MR. DORRIER: Thank you, Your Honor.  I'm

25   just doing it for my client.  I realize that.
```

```
1              THE COURT:  Thank you.

2              Recess court.

3

4    "I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled

6    matter.

7

8

9    /s/ Sonia Ferris                May 21, 2009

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```